MULTIDISTRICT LITIGATION FILED JAN 23 1980 PATRICIA D. HOWARD CLERK OF THE PANEL

1/23/80

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE RESOURCE EXPLORATION, INC.        )   DOCKET NO. 406
SECURITIES LITIGATION                   )

OPINION AND ORDER

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND ANDREW A. CAFFREY, ROY W. HARPER, CHARLES R. WEINER, EDWARD S. NORTHROP, AND ROBERT H. SCHNACKE, JUDGES OF THE PANEL.

PER CURIAM

I. BACKGROUND

This litigation consists of nine actions pending in a total of four districts: four in the Western District of Louisiana; three in the Southern District of New York; and one each in the Eastern District of Pennsylvania and the Southern District of Indiana.

Among the principal actors in this litigation are Resource Exploration, Inc. (Resource) and two of its wholly owned subsidiaries, Lafayette Funds, Inc. (Lafayette) and Oil & Gas Funds, Inc. (Oil & Gas).[1/] Between 1968 and 1975, Lafayette and Oil & Gas allegedly acted as general partners in at least 45 separate limited partnerships (and as co-venturers in several joint ventures) formed to engage in the business of oil and gas drilling and production.

---

[1/]  Resource, Lafayette and Oil & Gas presently are involved in Chapter XI bankruptcy proceedings in the Northern District of Ohio, and the bankruptcy court has stayed all proceedings against these parties.

Typically, a limited partner in any given partnership was allowed an income tax deduction for the partner's share of the intangible drilling expenses incurred by that limited partnership. The deductions were limited to the amount of the partner's investment, plus the partner's proportionate share of any bona fide non-recourse loans made to the limited partnership. Commencing in or about 1972, Resource allegedly arranged with The First National Bank of Ruston, Louisiana (First National) and The American Bank & Trust Company of Shreveport, Louisiana (American Bank & Trust) for sham non-recourse loans to some of the limited partnerships. Certain other Louisiana banks allegedly either participated in these loans or made similar loans.

In early 1976, the Securities and Exchange Commission (SEC) began an investigation of Resource, Lafayette, Oil & Gas and their involvement with the non-recourse loans purportedly made to the limited partnerships. The SEC's investigation resulted in an action for an injunction brought by the SEC in the Western District of Louisiana. That action included the following parties as defendants: Resource, Lafayette and Oil & Gas; several officers and/or directors of some or all of these three companies; and First National, its chairman/president and its vice-president. The complaint in this action alleged that these defendants had entered into a series of sham transactions regarding purported non-recourse loans from First National to some of the limited partnerships. The complaint further alleged that defendants

misrepresented the existence, nature and substance of those non-recourse loans to investors and to the independent public accountants for Resource, Lafayette and Oil & Gas.[2/] The SEC's action was concluded when consent orders were entered against all the defendants in the action.[3/]

Each of the nine actions before the Panel was commenced after the initiation of the SEC proceedings in the Western District of Louisiana. In addition to the parties named as defendants in the SEC's injunctive action, parties named as defendants or co-conspirators in one or more of the actions now before the Panel include a law firm which acted as counsel to Resource, Lafayette and Oil & Gas; various officers, directors and/or employees of Resource, Lafayette, Oil & Gas and another subsidiary of Resource; a company engaged in building and maintaining gas pipe lines and

---

[2/] The accounting firm of Lincove, Evans, Cole & Peterson (Lincove Evans) served as the independent public accountant for Resource, Lafayette and Oil & Gas through September, 1975; thereafter, the accounting firm of Price Waterhouse & Co. (Price Waterhouse) performed these functions for Resource, Lafayette and Oil & Gas. In addition, Price Waterhouse served as the independent public accountant for the limited partnerships both before and after September, 1975.

[3/] A grand jury sitting in the Western District of Louisiana also investigated the matters that were the subject of the SEC proceedings. On April 13, 1979, the grand jury handed down an indictment against an individual who was the president and a director of Resource, Lafayette and Oil & Gas. The indictment charges this individual, together with others, with many of the allegations included in the SEC's injunctive action. In particular, the indictment includes allegations concerning misrepresentations made to Price Waterhouse about purported non-recourse loans from First National to some of the limited partnerships. **The defendant pleaded guilty on September 13, 1979, and is awaiting sentencing.**

in the exploration, acquisition and transmission of gas, and this company's parent corporation; Price Waterhouse; Lincove Evans; and two broker-dealers and certain of their registered representatives who allegedly participated in the offer and sale of the limited partnership interests. Plaintiffs in each action are persons who purchased interests in one or more of the limited partnerships. The complaint in each action alleges that defendants violated the federal securities statutes[4] in connection with the offer and sale to plaintiffs of investment interests in one or more limited partnerships. Defendants are basically charged with misrepresenting the tax benefits of owning interests in the limited partnerships and misrepresenting the financial condition of the partnerships, including their ability timely to drill viable oil and gas wells.

Six of the nine actions before the Panel were commenced as class actions. In two of these actions, one pending in the Southern District of New York and one in the Western District of Louisiana, plaintiffs seek to represent a class consisting of all persons who purchased limited partnership interests from 1971 until 1978.[5] In a second Southern

---

[4] Some of the complaints also allege that defendants violated certain state securities laws and/or the common law.

[5] The same plaintiff commenced each of these two actions. Plaintiff originally filed a complaint in the Southern District of New York against, inter alia, First National. In June 1979, however, the claims against First National were transferred from the Southern District of New York to the Western District of Louisiana because First National, as a national bank, may be sued only in its home district. 12 U.S.C. §94.

District of New York action, plaintiffs seek certification of a class consisting of all persons who purchased interests in the limited partnerships between 1968 and 1975. In two additional actions, one pending in the Southern District of New York and one in the Western District of Louisiana, plaintiffs seek to represent a class consisting of all purchasers of interests in the limited partnerships between January 1, 1972 and November 17, 1975.[6/] Finally, in the Eastern District of Pennsylvania action, the purported class consists of approximately 35 persons who purchased interests in a particular limited partnership that was offered for sale commencing in 1975. No class determinations have yet been reached in any of these actions.

Discovery is not well advanced in any of the actions before the Panel. The parties have brought to our attention certain other pretrial proceedings that have occurred in some of these actions, however.

In the Pennsylvania action, defendants' motion for summary judgment based on a statute of limitations defense has been *sub judice* since June, 1979.

Certain defendants in the New York actions have moved, pursuant to 28 U.S.C. §1404(a), to transfer those actions

---

[6/] The same plaintiff commenced both of these actions. The complaint in the Louisiana action brought by this plaintiff, which names only First National as a defendant, alleges as follows:

> The other possible defendants to this action are the subject of a separate lawsuit filed in the ...Southern District of New York. Upon information and belief, First National is sued herein in a separate action because no national bank may be sued outside of its district.

to the Western District of Louisiana. Alternatively, American Bank & Trust has moved to sever the claims against it in the New York actions and to transfer those claims to the Western District of Louisiana pursuant to Section 1404(a). Some of the parties in the New York actions have advised the Panel that: (1) the district court in New York has reserved decision on these motions pending the Panel's ruling under Section 1407; and (2) at the direction of the court, counsel in the New York actions have agreed to a schedule governing class action motions and discovery.

Finally, in the Indiana action an appeal and a cross-appeal have been taken to the district judge from an order by a magistrate imposing sanctions upon a defendant for failure to provide discovery. The record before the Panel is unclear as to whether this motion has been fully briefed and/or argued, however.

II. PROCEEDINGS BEFORE THE PANEL

Because these nine actions appeared to share common questions of fact, the Panel originally issued an order to show cause why the actions should not be transferred to a single district for coordinated or consolidated pretrial proceedings. See Rule 8(a), R.P.J.P.M.L., 78 F.R.D. 561, 566-67 (1978). Subsequently, one of the plaintiffs who has filed an action in the Southern District of New York and also in the Western District of Louisiana moved the Panel to centralize all actions in the Western District of Louisiana.

Plaintiff in one of the Louisiana actions; one of the plaintiffs who has brought actions in both the Southern District of New York and the Western District of Louisiana; and numerous defendants oppose Section 1407 transfer. Alternatively, these parties favor centralization in the Southern District of New York. All other responding parties favor transfer of some or all of these actions; some of these parties favor centralization in the Southern District of New York, while others urge us to centralize these actions in the Western District of Louisiana. In addition, should the Panel find transfer appropriate, (1) numerous defendants involved in, <u>inter alia</u>, the Pennsylvania action request that that action be excluded from transfer pending the resolution of defendants' motion for summary judgment; and (2) plaintiff in the Indiana action moves the Panel to exclude from transfer the issues concerning the appeals to the Indiana district judge from the magistrate's discovery ruling.

III. <u>HOLDING</u>

We find that these actions involve common questions of fact and that **centralization at this time of all actions,** except the Pennsylvania action, in the Southern District of New York for coordinated or consolidated pretrial proceedings under Section 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

IV. THE QUESTION OF TRANSFER

The parties that oppose Section 1407 transfer acknowledge the presence of common factual questions among these actions, but maintain that coordinated or consolidated pretrial proceedings pursuant to Section 1407 are not warranted in this litigation. Opponents maintain that the complaints in the three Southern District of New York actions encompass the allegations of the complaints in the six other actions before the Panel, and these parties point out that the classes sought in the New York actions include all purchasers of the limited partnerships involved in this litigation. The Indiana action and two of the Louisiana actions, opponents assert, are simply individual actions brought by lone investors. The remaining two Louisiana actions are pending in the Western District of Louisiana because of the unique venue provisions (12 U.S.C. §94) governing national banks, opponents state. And the Pennsylvania action, opponents point out, is a purported class action brought on behalf of approximately 35 persons who invested in only one of the limited partnerships. Thus, opponents conclude:

> [I]t is clear that the New York actions are the most comprehensive and complex and that the control of pre-trial proceedings by the one judge to whom all three of these actions have been assigned will resolve to the extent necessary any conflicts in depositions or redundancy in proceedings which might result among the various cases.

We find these arguments unpersuasive. Opponents' suggestion of voluntary or informal cooperation among the parties and the courts involved in this litigation is commendable. We are convinced, however, that the number of

actions before us, coupled with the complexity of the common factual questions regarding the sale and operation of the limited partnerships, **warrant Section 1407 transfer in** order to ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery, eliminate the possibility of conflicting rulings and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary. See <u>In re Commonwealth Oil/Tesoro Petroleum Securities Litigation</u>, 458 F. Supp. 225, 229 (J.P.M.L. 1978). An additional justification for transfer is the fact that most of the actions before us have been brought on behalf of similar or overlapping classes of purchasers of the limited partnerships. It is desirable to have a single judge oversee the class action issues in these actions to avoid duplicative efforts and inconsistent rulings in this area. See <u>In re First National Bank, Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litigation</u>, 451 F. Supp. 995, 997 (J.P.M.L. 1978).

We are **persuaded,** on principles of comity, to defer our decision concerning transfer of the Pennsylvania action because of the pendency of the defendants' motion for summary judgment, which is fully submitted to the potential transferor judge. <u>See</u>, e.g., <u>In re Air Crash Disaster at Tenerife, Canary Islands, on March 27, 1977</u>, 435 F. Supp. 927, 928 n.3 (J.P.M.L. 1977); <u>In re Professional Hockey Antitrust</u>

Case MDL No. 406   Document 2   Filed 05/20/15   Page 10 of 13

- 10 -

Litigation, 352 F. Supp. 1405, 1406-07 (J.P.M.L. 1973); In re Kaehni Patent Litigation, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970).

The motion by the Indiana plaintiff to exclude from transfer certain issues involved in the Indiana action falls outside the purview of the Panel. While Section 1407(a) provides a mechanism whereby the Panel can effectively exclude claims from Section 1407 transfer, the Panel is not empowered to carve out issues for separate treatment under Section 1407. In In re Plumbing Fixture Cases, 298 F. Supp. 484, 489-90 (J.P.M.L. 1968), the Panel stated as follows:

> While paragraph (a) of Section 1407 permits separation and remand by the Panel of claims, cross-claims, counterclaims and third-party claims separable under paragraph (b) of Rule 42, it does not permit the Panel to order a separate trial of any separate issue or * * * issues which are also separable under paragraph (b) of rule 42. This unequivocal and obviously deliberate withholding from the Panel of power to separate issues in a single civil action assigning one or more to the transferee court and one or more to the transferor court is a clear, precise and wise limitation on the powers of the Panel.

V. THE TRANSFEREE DISTRICT

The primary arguments of the parties that favor centralization in the Western District of Louisiana are as follows: (1) the alleged sham loan transactions were entered into in that district, and the bank defendants' records are located there; (2) Lincove Evans' accounting records concerning Resource, Lafayette and Oil & Gas are maintained in the Western District of Louisiana; (3) Price Waterhouse's accounting records regarding Resource, Lafayette, Oil & Gas and the limited partnerships are located in Houston, Texas, which

is near the Western District of Louisiana; (4) the documentary evidence and transcripts of the testimony generated by the SEC proceeding and the more recent grand jury investigation and criminal action are on file with the federal district court in the Western District of Louisiana; (5) because of the SEC and the criminal proceedings, the district court in the Western District of Louisiana is uniquely familiar with the subject matter of this litigation; and (6) many individual defendants and/or potential witnesses reside in Louisiana, or in states adjoining Louisiana.

On the basis of the record before us, either the Western District of Louisiana or the Southern District of New York would be an appropriate transferee forum. On balance, however, we are convinced that the Southern District of New York is the preferable forum for the conduct of coordinated or consolidated pretrial proceedings in this litigation. Initially we note, as opponents of transfer have pointed out, that the most comprehensive purported class actions have been commenced in the Southern District of New York,[8/] and we also observe that the court there has established a schedule governing class action motions and discovery. In addition, some of the parties who favor centralization in the Southern District of New York have advised us that all "parties to this litigation for whom a substantial quantity of documents

---

[8/] In addition, the record before us reveals that two of the Western District of Louisiana actions are pending there only because of the provisions of the National Bank Venue Act, supra, and that plaintiffs in those two actions elected to bring their actions against other defendants in the Southern District of New York.

may be anticipated as part of the discovery process" have agreed to establish a document depository for these materials in New York City. Finally, we are persuaded that the Southern District of New York is a far more convenient and accessible forum for the parties in this litigation than the Western District of Louisiana.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, all actions listed on the following Schedule A and pending in the Southern District of Indiana and the Western District of Louisiana be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Charles L. Brieant for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A.

IT IS FURTHER ORDERED that our ruling regarding transfer of the action listed on Schedule A and pending in the Eastern District of Pennsylvania be, and the same hereby is, DEFERRED until the ruling of the court in that district on defendants' pending motion for summary judgment.

DOCKET NO. 406

SCHEDULE A

|  | CIVIL ACTION NO. |
|---|---|
| **SOUTHERN DISTRICT OF INDIANA** | |
| J. Thomas O'Brien v. Resource Exploration, Inc., et al. | IP77-733-C |
| **WESTERN DISTRICT OF LOUISIANA** | |
| Chester Z. Haverback v. Resource Exploration, Inc., et al. | CI 780227 |
| Irwin Kossoff v. The First National Bank of Ruston, Louisiana | CI 790139 |
| Frank B. Foster, III v. J.E. Trahan, et al. | CI 790189 |
| Arnold B. Elkind, etc. v. The First National Bank of Ruston, Louisiana | CI 790875 |
| **EASTERN DISTRICT OF PENNSYLVANIA** | |
| Philip Vogel, et al. v. J. C. Trahan, et al. | 78-2724 |
| **SOUTHERN DISTRICT OF NEW YORK** | |
| Jesse M. Townsley, et al. v. Price Waterhouse & Co., et al. | 78 Civ 5996 |
| Arnold B. Elkind, etc. v. Price Waterhouse & Co., et al. | 78 Civ 6084 |
| Irwin Kossoff v. J. Russell Duncan, et al. | 79 Civ 54 |